UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| WACHTER, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. _____ |
| ) | |
| BRIAN K. PITTS, ) | |
|     404 Cherry Court ) | |
|     Brentwood, Tennessee 37027 ) | |
| ) | |
| - and - ) | |
| ) | |
| MEGAN PITTS, ) | |
|     404 Cherry Court ) | |
|     Brentwood, Tennessee 37027 ) | |
| ) | |
| - and - ) | |
| ) | |
| JOSH ESTES, ) | |
|     304 Sunside Circle ) | |
|     Mount Juliet, Tennessee 37122 ) | |
| ) | |
| - and - ) | |
| ) | |
| CABLING INNOVATIONS, LLC, ) | |
|     Registered agent for service of process: ) | |
|     Russ Cook and Associates ) | |
|     Russell T. Cook ) | |
|     5141 Virginia Way, Suite 220 ) | |
|     Brentwood, Tennessee 37027 ) | |
| ) | |
| Defendants. ) | |

---

**COMPLAINT**

---

Plaintiff Wachter, Inc., ("Wachter"), for its Complaint against Defendants Brian K. Pitts, Megan Pitts, Josh Estes, and Cabling Innovations, LLC, (collectively "Defendants"), states and allege as follows:

## Parties, Jurisdiction and Venue

1. Wachter is a Kansas corporation registered to do business in the State of Tennessee.

2. Defendant Brian K. Pitts ("Brian Pitts") is an individual who currently resides at 404 Cherry Court, Brentwood, Tennessee 37027.

3. Defendant Megan Pitts a/k/a Megan Ivey ("Megan Pitts") is an individual who currently resides at 404 Cherry Court, Brentwood, Tennessee 37027.

4. Defendant Josh Estes ("Estes") is an individual who currently resides at 304 Sunside Circle, Mount Juliet, Tennessee 37122.

5. Defendant Cabling Innovations, LLC, ("Cabling Innovations") is a limited liability company organized under the laws of the State of Tennessee, that has a principal place of business at 404 Cherry Court, Brentwood, Tennessee 37027.

6. Upon information and belief, Cabling Innovations is owned, at least in part, by Brian Pitts.

7. Brian Pitts is a former employee of Wachter and current employee and/or owner of Cabling Innovations.

8. Josh Estes is a former employee of Wachter and current employee of Cabling Innovations.

9. Megan Pitts is the wife of Brian Pitts and an employee and/or agent of Cabling Innovations.

10. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Brian Pitts, Megan Pitts, and Josh Estes because they are citizens of and domiciled in Tennessee, living within the jurisdiction of the United States District Court for the Middle District of Tennessee.

12. This Court has personal jurisdiction over Cabling Innovations because it is a limited liability company doing business within the jurisdiction of the United States District Court for the Middle District of Tennessee.

13. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

## Allegations Common to All Counts

14. Wachter is a leading national provider of infrastructure services, communications equipment, and technical support.

15. Wachter's services include on-site wired and wireless network infrastructure, telephone and structured cabling, design, installation, and electrical services.

16. On September 13, 2010, Wachter hired Brian Pitts as an Account Project Manager in Nashville, Tennessee.

17. As an Account Project Manager, Brian Pitts was responsible for managing multiple client complex projects.

18. On December 5, 2011, Wachter promoted Brian Pitts to the position of Local Business Unit Manager – Nashville.

19. As a Local Business Unit Manager – Nashville Brian Pitts was responsible for leading, coaching, and managing Wachter's Nashville office, selling and managing projects, and profit and loss for the business unit.

20. On September 20, 2017, Wachter promoted Brian Pitts to the position of Local Business Account Manager.

21. As a Local Business Account Manager Brian Pitts was responsible for seeking and maintaining new customer opportunities.

22. On April 27, 2018, Wachter terminated Brian Pitts for misconduct.

23. On July 22, 2013, Wachter hired Estes as a Foreman.

24. As a Foreman Estes was responsible for managing projects Wachter performed for Wachter customers.

25. Estes resigned his position at Wachter effective February 2, 2018.

26. As part of their employment, Wachter provided Brian Pitts and Estes with

   a. a Wachter email account, and

   b. access to Wachter's computer system which contained certain confidential and trade secret information including, but not limited to, pricing and other financial data; customer lists, customer requirements and customer contacts; and other nonpublic business information about Wachter, its customers and its suppliers.

27. As a condition of their employment, Brian Pitts and Estes signed Wachter's Employee Handbook which contains a Conflict of Interest policy that provides, in part, as follows:

> Employees have an obligation to conduct business within guidelines that prohibit actual or potential conflicts of interest. . . .
>
> An actual or potential conflict of interest occurs when an employee is in a position to influence a decision that may result in a personal gain for that employee or for a relative as a result of Wachter's business dealings. . . .
>
> Personal gain may result not only in cases where an employee or relative has a significant ownership in a firm with which Wachter does business, but also when an employee or relative receives any kickback, bribe, substantial gift, or special consideration as a result of any transaction or business dealings involving

Wachter.

28. The Employee Handbook Brian Pitts and Estes signed for also contains a Confidentiality policy that provides, in part, as follows:

> No one is permitted to remove or make copies of any Wachter records, reports or documents without prior management approval. Disclosure of confidential information could lead to termination, as well as other possible legal action.

29. During their employment at Wachter, Brian Pitts and Estes accessed the Wachter email and computer system to review and obtain data for their own personal benefit and/or the benefit of Cabling Innovations.

30. During his employment at Wachter, Brian Pitts forwarded emails and Wachter confidential information from his Wachter email account to his personal and/or Cabling Innovations email account without authorization from Wachter.

31. During his employment at Wachter, Brian Pitts forwarded emails and Wachter confidential information from his Wachter email account to Estes and/or Megan Pitts without authorization from Wachter.

32. Brian Pitts was using information he obtained through his employment with Wachter in order to bid for and/or obtain work on behalf of Cabling Innovations. By way of example only:

   a. In April 2018, Brian Pitts utilized Wachter resources and confidential information to submit a bid to a Wachter customer on behalf of Cabling Innovations for work at the MDF project.

   b. In March 2018, Brian Pitts and Josh Estes utilized Wachter resources and confidential information to obtain and perform work for a Wachter customer on behalf of Cabling Innovation at the E|Spaces Chattanooga project.

   c. In February 2018, Brian Pitts utilized Wachter resources and confidential information to submit a bid to a Wachter customer on behalf of Cabling

Innovations for work at the Medhost project.

    d.    In November 2017, Brian Pitts and Megan Pitts utilized Wachter resources and confidential information to submit a bid to a Wachter customer on behalf of Cabling Innovations for work at the eMIIDS project.

    e.    In February 2017, Brian Pitts utilized Wachter resources and confidential information to recommend to a Wachter customer that it contract work to Cabling Innovations.

33. Based on information provided by Brian Pitts, Cabling Innovations bid for and/or obtained work from Wachter customers that but for Brian Pitts's sharing of Wachter's confidential information would have been performed by Wachter.

34. During his employment at Wachter, Brian Pitts expensed to Wachter certain expenses that he claimed were for entertainment of Wachter customers when the expenses were for the benefit of Brian Pitts personally and/or Cabling Innovations.

35. Megan Pitts received and used confidential Wachter information from Brian Pitts for her and/or Cabling Innovations' benefit.

36. Estes received and used confidential Wachter information from Brian Pitts for his and/or Cabling Innovations' benefit.

## COUNT I
### Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)
### (Against Brian Pitts, Estes, and Cabling Innovations)

37. Wachter realleges and incorporates by reference herein paragraphs 1 through 36.

38. The federal Computer Fraud and Abuse Act ("CFAA") prohibits actions whereby a person "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value. . . ." 18 U.S.C. § 1030(a)(4). The CFAA defines a

"protected computer" as a computer that "is used in interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

39. Sections (a)(5)(A) and (a)(5)(B) of the CFAA similarly prohibit actions whereby a person "knowingly causes the transmission of a program, information, code, or command" or "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage . . ." 18 U.S.C. §§ (a)(5)(A) and (a)(5)(B).

40. The CFAA provides that a person who accesses a computer with authorization, nevertheless "exceeds authorized access" if he uses his access "to obtain or alter information in the computer that the accesser is not entitled to so obtain or alter." 18 U.S.C. § 1030(e)(6).

41. A "loss" is defined in the CFAA as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

42. The Wachter computer system to which Brian Pitts, Estes, and Cabling Innovations gained access constitutes a "protected computer" within the meaning of 18 U.S.C. § 1030(e) because the computer system is used in interstate or foreign commerce or communication.

43. While Brian Pitts and Estes were still employed by Wachter, but while they were acting as an agent for themselves and/or Cabling Innovations, they intentionally and improperly accessed and obtained computer information, computer files, and other confidential and proprietary information belonging to Wachter from Wachter's protected computers. Brian Pitts and Estes shared that information with Cabling Innovations to use to compete with Wachter.

44. Brian Pitts and Estes's conduct was without authorization or "exceeded authorized access" in that Brian Pitts and Estes accessed Wachter's protected computer to benefit themselves and/or Cabling Innovations. While Brian Pitts and Estes had the right to access Wachter's computer while they were employees of Wachter, that right of access did not extend to actions taken contrary to Wachter's interests. Further, such access violated Wachter's policies which specifically prohibit employees from using Wachter's computers other than for Wachter business purposes, prohibit employees from disclosing or using any confidential information other than on behalf of Wachter, and prohibit employees from performing any work for a competitor or any work that would constitute a conflict of interest.

45. As a result, Brian Pitts, Estes, and Cabling Innovations furthered their intended fraud upon Wachter and caused Wachter to lose in excess of $5,000.

46. Wachter has suffered and will continue to suffer irreparable harm and loss, and has sustained damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

47. Wachter has suffered both a loss in excess of $5,000 and damage to the integrity of its data and system caused by Brian Pitts, Estes, and Cabling Innovations' conduct. Such loss/damage includes but is not limited to the costs, including time and expenses that have been required of Wachter's managers, employees and consultants to investigate and determine the extent of the access Brian Pitts, Estes, and Cabling Innovations obtained; determine what information was deleted or taken; determine whether Brian Pitts, Estes, and/or Cabling Innovations altered or downloaded additional confidential information from Wachter's computer

network; loss of valuable business; loss of profits and future profits; and loss of goodwill, in an amount to be determined at trial.

## COUNT II
## Violation of the Electronic Communications Protection Act (ECPA)
## (Against All Defendants)

48. Wachter realleges and incorporates by reference herein paragraphs 1 through 47.

49. The Electronic Communications Protection Act ("ECPA") imposes civil liability on any person who (1) "intentionally intercepts , endeavors to intercept , or procures any other person to intercept , any ... electronic communication"; or who (2) either "intentionally discloses, or endeavors to disclose to any other person," or "intentionally uses, or endeavors to use the contents of any ... electronic communication, knowing or having reason to know that the information was obtained through the interception of a[n] ... electronic communication." 18 U.S.C. §§ 2511(1) and 2520.

50. An "intercept" occurs whenever the contents of any electronic communication are in transmission and are simultaneously acquired by an electronic, mechanical, or other device; an "electronic communication" includes "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects "interstate commerce." 18 U.S.C. §§ 2510(4) & (12).

51. By forwarding copies of internal Wachter emails to his own personal email account, without the senders' knowledge or authorization, Brian Pitts and/or Cabling Innovations intentionally intercepted electronic communications in violation of the ECPA.

52. By receiving copies of internal Wachter emails which they knew were sent for an improper purpose, Megan Pitts and Estes intentionally intercepted electronic communications in violation of the ECPA.

53. As a result of these violations, Wachter has suffered damages in excess of the minimum statutory damages under the ECPA, and has incurred attorneys' fees in its pursuit to remedy these damages.

54. Further, because Brian Pitts, Megan Pitts, Estes, and/or Cabling Innovations engaged in the aforementioned conduct intentionally, knowingly, or recklessly, Wachter is entitled to punitive damages.

## COUNT III
### Violation of the Stored Communications Act (SCA)
### (Against Brian Pitts and Cabling Innovations)

55. Wachter realleges and incorporates by reference herein paragraphs 1 through 54.

56. Wachter maintains an email server system that provides electronic communication services and stores and sends electronic mail messages from individual email "accounts" created for the benefit and use of its employees.

57. Wachter's email server system and the components of the computer network at Wachter are a "facility" under the Stored Communications Act, 18 U.S.C. § 2701 ("SCA").

58. Brian Pitts was authorized to access and use Wachter's email system for legitimate business-related purposes for the benefit of Wachter. Brian Pitts was not authorized to access or use the email system to access or use the email system to appropriate Wachter's confidential information or Wachter's proprietary materials for his and Cabling Innovations' own private use or benefit, or for the use and benefit of entities or persons other than Wachter.

59. Brian Pitts exceeded the scope of his authorization to access Wachter's email system when he forwarded electronic mail to his own email account for his and Cabling Innovations' benefit.

60. Brian Pitts knowingly or intentionally forwarded the emails for the purpose of taking property and/or customers that belonged to Wachter for his and Cabling Innovations' own private use or the use of a person or entity other than Wachter.

61. Brian Pitts's actions violate the SCA.

62. As a result of Brian Pitts's violations, Wachter has suffered damages in excess of the minimum statutory damages under the SCA, and has incurred attorneys' fees in its pursuit to remedy these damages.

63. Further, because Brian Pitts engaged in the aforementioned conduct intentionally, knowingly, or recklessly, Wachter is entitled to punitive damages.

## COUNT IV
## Breach of Fiduciary Duty
## (Against Brian Pitts and Estes)

64. Wachter realleges and incorporates by reference herein paragraphs 1 through 63.

65. By virtue of their prior status as employees of Wachter, Brian Pitts and Estes operated as fiduciaries with respect to Wachter's business and owed Wachter the fiduciary duties of loyalty and care and was required to keep the confidential and business secrets of Wachter inviolate.

66. Brian Pitts and Estes breached their fiduciary duties by engaging in misconduct that served their own self-interests and the interests of others rather than the interests of Wachter and acted in a manner inconsistent with the best interests of Wachter – to wit, relying on their knowledge and information obtained through their employment with Wachter to improperly

solicit, accept, service, switch, and/or convert Wachter customers to others in order to unfairly compete against Wachter.

67. As a direct and proximate result of Brian Pitts and Estes's breach of fiduciary duties, Wachter has incurred damages.

68. The actions of Brian Pitts and Estes as alleged in Count IV were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wachter entitling Wachter to an award of punitive damages.

## COUNT V
## Breach of Duty of Loyalty
### (Against Brian Pitts and Estes)

69. Wachter realleges and incorporates by reference herein paragraphs 1 through 68.

70. Brian Pitts and Estes had and have a duty of loyalty to Wachter by virtue of their duties to act for the benefit of Wachter in matters connected with their employment relationships with Wachter and by the special confidence reposed in them by Wachter.

71. Brian Pitts and Estes breached their duty of loyalty owed to Wachter by their conduct in improperly accessing and taking Wachter confidential information as well as communicating with Wachter's customers on behalf of themselves and/or others for the purpose of soliciting their services and otherwise competing with Wachter.

72. Brian Pitts and Estes's breach of the duty of loyalty has caused Wachter to suffer damages.

73. The actions of Brian Pitts and Estes as alleged in Count V were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wachter entitling Wachter to an award of punitive damages.

## COUNT VI

## Tortious Interference with Business Relationships
### (Against All Defendants)

74. Wachter realleges and incorporates by reference herein paragraphs 1 through 73.

75. A business relationship and/or contract exists between Wachter and each of its customers, including, but not limited to, those customers specifically enumerated in Paragraph 32 of this Complaint.

76. Brian Pitts, Megan Pitts, Estes, and Cabling Innovations had actual knowledge of these business relationships between Wachter and its customers by virtue of Brian Pitts and Estes's positions as employees for Wachter.

77. Wachter has a valid business relationship and/or prospective relationship in connection with each of its customers with whom Brian Pitts, Megan Pitts, Estes, and Cabling Innovations has engaged in communications with on behalf of themselves for the purpose of soliciting their services and otherwise competing improperly with Wachter.

78. By using proprietary and confidential information of Wachter, Brian Pitts, Megan Pitts, Estes, and Cabling Innovations intentionally and improperly interfered with Wachter's business relationship with respect to specific customers and/or prospective customers by contacting them to solicit their services away from Wachter.

79. The predominant purpose of Brian Pitts, Megan Pitts, Estes, and Cabling Innovations in soliciting these specific customers with the improperly obtained information was to cause harm to Wachter.

80. Wachter has suffered damages as a result of Brian Pitts, Megan Pitts, Estes, and Cabling Innovations' conduct.

81. The actions of Brian Pitts, Megan Pitts, Estes, and Cabling Innovations as alleged in Count VI were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wachter entitling Wachter to an award of punitive damages.

## COUNT VII
## Unjust Enrichment
## (Against All Defendants)

82. Wachter realleges and incorporates by reference herein paragraphs 1 through 81.

83. As a result of their misconduct as alleged in this Complaint, Brian Pitts, Megan Pitts, Estes, and Cabling Innovations have been unjustly enriched through the continued possession of Wachter confidential information and the solicitation and servicing of Wachter customers.

84. The retention of these benefits by Brian Pitts, Megan Pitts, Estes, and Cabling Innovations under the circumstances is inequitable and, therefore, Brian Pitts, Megan Pitts, Estes, and Cabling Innovations should be required to disgorge their wrongful gains.

85. The actions of the Brian Pitts, Megan Pitts, Estes, and Cabling Innovations as alleged in Count VII were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wachter entitling Wachter to an award of punitive damages.

## COUNT VIII
## Conversion
## (Against All Defendants)

86. Wachter realleges and incorporates by reference herein paragraphs 1 through 85.

87. Brian Pitts, Megan Pitts, Estes, and Cabling Innovations intentionally exercised wrongful dominion or control over Wachter property – to wit, the information regarding Wachter's customers (to which they only had access to by virtue of Brian Pitts and Estes's prior status as employees for Wachter).

88. Brian Pitts, Megan Pitts, Estes, and Cabling Innovations wrongful dominion and control over Wachter property constituted an unauthorized assumption and exercise of the right of ownership over property belonging to Wachter.

89. As a direct and proximate result of this wrongful dominion or control over Wachter's property, Wachter is entitled to compensation for the full value of the property.

90. The actions of Brian Pitts, Megan Pitts, Estes, and Cabling Innovations as alleged in Count VIII were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wachter entitling Wachter to an award of punitive damages.

## COUNT IX
## Civil Conspiracy
## (Against All Defendants)

91. Wachter realleges and incorporates by reference herein paragraphs 1 through 90.

92. Defendants had a meeting of the minds with the object of accomplishing the conduct stated in this Complaint.

93. Defendants did perform one or more unlawful overt acts in furtherance of accomplishing their objective, as set forth above.

94. Wachter has suffered damages as a result of this conspiracy.

95. The actions of the Defendants as alleged in Count IX were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Wachter entitling Wachter to an award of punitive damages.

## JURY DEMAND

Wachter demands a trial by jury on all issues so triable.

WHEREFORE, Wachter prays for judgment in its favor and against Pitts and Cabling Innovations for damages as are fair and reasonable, including actual damages, punitive damages,

equitable relief, pre-judgment and post-judgment interest, costs, and attorneys' fees; and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/Robert W. Ratton, III*
Robert W. Ratton, III (TN BPR#24669)
FISHER & PHILLIPS LLP
1715 Aaron Brenner Drive
Suite 417
Memphis TN 38120
Phone: 901-526-0431
Fax: 901-526-8183
rratton@fisherphillips.com


James R. Holland, II (*pro hac vice to be filed*)
Melody K. Rayl (*pro hac vice to be filed*)
FISHER & PHILLIPS, LLP
4900 Main Street, Suite 650
Kansas City, Missouri 64112
TEL: (816) 842-8770
FAX: (816) 842-8767

Attorneys for Plaintiff