IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WACHTER, INC., | ) |
| Plaintiff/Counter-Defendant, | ) ) ) |
| v. | ) NO. 3:18-cv-00488 ) |
| CABLING INNOVATIONS, LLC, *et al.*, | ) JUDGE RICHARDSON ) |
| Defendants/Counter-Plaintiffs. | ) ) ) |

## **MEMORANDUM OPINION**

Pending before the Court is Counter-Defendant Wachter, Inc.'s Motion to Dismiss Counterclaim (Doc. No. 86, "the Motion"). Counter-Plaintiffs Brian Pitts, Megan Pitts, Josh Estes, and Cabling Innovations filed a response to the Motion, (Doc. No. 94), and Counter-Defendant replied (Doc. No. 95).

## **BACKGROUND**

On May 24, 2018, Plaintiff/Counter-Defendant filed its Complaint in this Court asserting a total of nine claims[1] against four separate Defendants. (Doc. No. 1). The claims arise from Mr. Pitts and Mr. Estes' allegedly diverting Wachter customers to Cabling Innovations during the time in which defendant Mr. Pitts and Mr. Estes were employed by Wachter. (*Id*. at ¶¶ 29-33). On July 16, 2018, Counter-Plaintiffs filed a motion to dismiss. (Doc. No. 18). On May 7, 2019, the Court granted in part Counter-Plaintiffs' motion to dismiss and dismissed seven[2] of Counter-Defendant's

---

[1] The claims were: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) violation of the Electronic Communications Protection Act; (3) violation of the Stored Communications Act; (4) breach of fiduciary duty; (5) breach of duty of loyalty; (6) tortious interference with business relationships; (7) unjust enrichment; (8) conversion; and (9) civil conspiracy.

[2] As the Court noted in its Order granting in part Counter-Plaintiffs' Motion to Dismiss, Counter-Defendant's civil conspiracy claim is not an independent cause of action. (Doc. No. 77 at 1). Nevertheless, the Court allowed this claim

1

nine claims. Counter-Defendant's breach of loyalty claims and civil conspiracy claims survived the motion. (Doc. No. 76). On July 11, 2019, Counter-Plaintiffs filed their Answer to the Complaint. (Doc. No. 81). On August 1, 2019, Counter-Plaintiffs filed an Amended Answer and Counterclaim asserting a single claim—abuse of process—against Counter-Defendant. (Doc. No. 84). Counter-Defendant filed its Motion to Dismiss the Counterclaim on August 22, 2019. (Doc. No. 86).

## ALLEGED FACTS[3]

Counter-Defendant initiated this lawsuit "to achieve its collateral goal to eliminate Cabling Innovations from the Nashville market" and used this lawsuit "as a weapon to force Cabling Innovations out of business as restitution for Mr. Pitts' customers moving their business to Cabling Innovations after Mr. Pitts left Wachter." (Doc. No. 84 ("Counterclaim") at ¶¶ 51-52).

Prior to the dismissal of any of Counter-Defendant's claims, and during the process of written discovery, Counter-Defendant served 20 subpoenas for documents, 19 of which were served on current or former customers of Counter-Plaintiff Pitts that could have been obtained from Counter-Plaintiffs. (*Id*. at ¶¶ 35, 55). Counter-Defendant's primary motive for serving the subpoenas was to harm the reputations of Cabling Innovations and the other Counter-Plaintiffs. (*Id*. at ¶ 56).

In addition, Counter-Defendant propounded requests for production of documents on each of the four Counter-Plaintiffs, totaling 201 requests in all, and a total of 22 interrogatories with various subparts totaling 321 separate requests for information. (*Id*. at ¶ 36). Much of the

---

to survive as a "as a basis to: (1) assert the liability of [Counter-Plaintiffs] Megan Pitts and Cabling Innovations, LLC based on the alleged underlying torts of [Counter-Plaintiffs] Brian Pitts and Josh Estes asserted in Count V; and (2) seek against each of the four [Counter-Plaintiffs] all damages occasioned by any acts of any of them in furtherance of the alleged civil conspiracy." (*Id*.).

[3] The cited facts are alleged in the Counterclaim and accepted as true for purposes of the instant motion to dismiss.

aforementioned discovery requests sought confidential, personal, or irrelevant information that was not reasonably calculated to lead to discoverable information. (*Id*. at ¶¶ 58-59). For example, Counter-Defendant sought "forensic images of cell phones, laptops and other devices, bank account information, safety deposit box existence and location, trust beneficiary information, and personal licensures and certifications." (*Id*. at ¶ 58). Additionally, much of the requested information was already in Counter-Defendant's possession. (*Id*. at ¶ 59). Counter-Defendant's "primary motive in propounding the extensive written discovery requests on [Counter-Plaintiffs] was to unnecessarily increase the costs of litigation to eliminate Cabling Innovations from the Nashville market and to harass and embarrass the individually-named [Counter-Plaintiffs]." (*Id*. at ¶ 61).

## LEGAL STANDARD

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true as the Court has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018).

Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial, because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

**ANALYSIS**

Counter-Defendant seeks dismissal of Counter-Plaintiffs' only counterclaim, which is an abuse of process claim brought under Tennessee law based on the above-discussed alleged facts. "Under Tennessee law, an action for abuse of process lies for the use of legal process to obtain a

result that it was not intended to effect, for a wrongful purpose." *Montpelier v. Moncier*, No. E201600246COAR3CV, 2017 WL 2378301, at *5 (Tenn. Ct. App. June 1, 2017) (citing *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn. 1977)). "[A] plaintiff must allege that the defendant employed a specified legal process for a purpose for which it was not designed in order to compel a party to do something that it could not be compelled to do by the use of that process." *In re Prince*, 414 B.R. 285, 294 (M.D. Tenn. Bkrcy. 2009). Thus, to state a claim for abuse of process, two elements must be alleged: (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge. *Givens v. Milikin*, 75 S.W.3d 383, 400 (Tenn. 2002) (internal quotations omitted); *Bell ex rel. Snyder v. Icard*, 986 S.W.2d 550, 555 (Tenn. 1999).

Counter-Defendant argues that Counter-Plaintiffs failed to allege, as required, facts that would establish Counter-Defendant engaged in "'an act in the use of process other than such as would be proper in the regular prosecution of the charge.'" (Doc. No. 87 at 7 (quoting *Bell*, 986 S.W.2d at 555)). Counter-Defendant avers that it has "done nothing more in this case than it is permitted to do under the Federal Rules of Civil Procedure" and "merely engaging in routine discovery" should not subject a litigant to liability for abuse of process. (*Id.*).[4]

In response, Counter-Plaintiffs aver that the allegations in the Counterclaim suggest that Counter-Defendant "engaged in abusive and needlessly excessive discovery practices that were calculated to harass [Counter-Plaintiffs] and to create a vexatious and needless multiplication of discovery activities." (*Id.* at 21-22). Accordingly, Counter-Plaintiffs maintain that they have

---

[4] Counter-Defendant also contends that merely filing a complaint does not give rise to an abuse of process claim. Counter-Plaintiffs do not dispute this contention, and in their response, argue only that Counter-Defendant's discovery practices amount to abuse of process. Nevertheless, even if Counter-Plaintiffs were to argue that Counter-Defendant's filing of its complaint amounted to an abuse of process, that argument would fail because an abuse of process claim requires "an improper use of process *after* the process has been issued, rather than an issuance of process for an improper purpose in the first place." *Green v. Campbell Cty., Tenn.*, 352 F. Supp. 3d 860, 873 (E.D. Tenn. 2018); *see also Harmer v. Colom*, 650 F. App'x 267, 271 (6th Cir. 2016).

properly alleged an abuse of process claim because "Tennessee law supports a claim for abuse of process where a party has engaged in excessive and unnecessary discovery when knowing that the discovery sought possesses no relevance to the issues in the suit." (Doc. No. 94 at 19 (citing *Givens*, 75 S.W.3d at 402)).

In *Givens*, the lawsuit concerned a traffic accident involving the plaintiff and the defendant. During the lawsuit, the defendant's first retained attorney completed discovery in the case, including by submitting interrogatories, deposing the plaintiff, and requesting the plaintiff's medical records. 75 S.W.3d at 291. Prior to trial, the defendant terminated the first attorney and hired a new firm—the Richardson firm (a firm not associated with the undersigned)—to represent the defendant. *Id*. The Richardson firm began the discovery process anew, submitting interrogatories totaling 237 questions, requiring the plaintiff to participate in a second deposition that included intrusive questioning and lasted eight hours, and issued more than 70 discovery subpoenas to various medical and employment record custodians. *Id*. The plaintiff filed a separate action against the defendant alleging that the Richardson firm's discovery practices amounted to abuse of process. The trial court granted the defendant's motion to dismiss, and the Tennessee Court of Appeals affirmed.

The Tennessee Supreme Court reversed and held that "the [p]laintiff's complaint states a claim for abuse of process in the Richardson firm's use of discovery subpoenas, depositions, and interrogatories." *Id*. at 402. The Court explained that

> The test as to whether process has been abused is "whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do." In its most basic sense, therefore, an action for abuse of process is intended to prevent parties from using litigation to pursue objectives other than those claimed in the suit, such as using a court's process as a weapon "to compel [another party] . . . to take some action or refrain from it." It is the use of process to obtain this "collateral goal"—a

6

> result that the process itself was not intended to obtain—that is the very heart of this tort. The essential question to be answered . . . is whether the use of process to discourage the other party from continuing the litigation is a sufficiently "collateral goal" to give rise to tort liability.

*Id*. at 400–401 (internal citations omitted). The court found that such conduct did give rise to tort liability, however, the court noted that "no claim of abuse will be heard if process is used for its lawful purpose, even though it is accompanied with an incidental spiteful motive or awareness that the use of process will result in increased burdens and expenses to the other party." *Id*. at 401.

In reply, Counter-Defendant argues that *Givens* is entirely distinguishable because the discovery actions in that case were egregious, whereas here, its discovery requests are for "legitimate or reasonably justifiable purposes of advancing [the party's] interest in the ongoing litigation." (Doc. No. 95 at 4). Because of this distinction and the fact that its discovery requests were (according to Counter-Defendant) made for a "lawful purpose," Counter-Defendant contends, Counter-Plaintiffs have failed to state a claim for abuse of process.

"[C]ontentious litigation does not automatically translate into an abuse of process case." *PPG Indus., Inc. v. Payne*, No. 3:10-CV-73, 2012 WL 1836314, at *11 (E.D. Tenn. May 21, 2012). Even construing the allegations in the Counterclaim as true, the Court does not find that the allegations reveal any "act in the use of process other than such as would be proper in the regular prosecution of the charge." *Givens*, 75 S.W.3d at 400. When Counter-Defendant propounded its discovery requests, the Court had yet to rule on the motion to dismiss, and therefore, numerous causes of action (against four separate defendants) were pending. Such numerosity of claims and defendants could plausibly lead to extensive discovery.[5] Further, the Court has reviewed the

---

[5] The Court previously has expressed that such numerosity was neither necessary nor appropriate. (Doc. No. 76 at 29). But at the time of propounding these discovery requests, Counter-Defendant presumably saw it differently and could have, in good faith, sought discovery relevant to technical components applicable to the various causes of action, thus reasonably increasing the scope of discovery at that time.

discovery requests,[6] and finds that (with the exception of the admittedly very high number of document requests), the number and scope of the requests do not appear to be out of the ordinary, compared to other relatively similar cases. In fact, the high number of "separate requests for information" (321 according to the Counterclaim) contained in Counter-Defendant's interrogatories appears to arise from one interrogatory that asks Counter-Plaintiffs to list separate categories of information regarding 66 clients with whom Mr. Pitt worked. (Doc. No. 40-5 at 8). Otherwise, the interrogatories number 21 total. *See PPG Industries, Inc.*, 2012 WL 1836314, at *11 (granting summary judgment on an abuse of process claim, which was based in part upon "alleged excessive litigation tactics," where litigation was "contentious" and there was numerous claims asserted).[7] Thus, the Court finds that this case is distinguishable from *Givens*, where the discovery requests were egregious in number and substance, and propounded after discovery had already been completed by a former attorney.[8] Consequently, the Counterclaim does not adequately allege "an act in the use of process other than such as would be proper in the regular prosecution of the charge," *Bell*, 986 S.W.2d at 555, and therefore, does not state an abuse of process claim.

Moreover, the Court is concerned about the policy implications of approving an overly expansive view of abuse-of-process liability in circumstances when a party is unhappy with the

---

[6] The Court is free to consider these documents when deciding the instant motion to dismiss, because Counter-Plaintiffs referred to these documents in their counterclaim, and those documents are integral to the counterclaim. *See Blanch*, 333 F. Supp. 3d at 791-92.

[7] From the Court's review of the docket in *Payne*, it does not appear that the defendant there moved to dismiss the abuse of process claim pursuant to Rule 12(b)(6) prior to moving for summary judgment.

[8] Additionally, Counter-Plaintiffs object to some of Counter-Defendant's discovery requests on the grounds that the information requested was "already in possession" of the Counter-Defendant. (Counterclaim at ¶ 38). "However, the Federal Rules do not afford a party the option of refusing to produce discovery on the basis that she believes that the requesting party is already in possession of the requested discovery." *Henderson v. Wells Fargo Bank, N.A.*, No. 3:13CV378 (JBA), 2017 WL 684439, at *4 (D. Conn. Feb. 21, 2017). Accordingly, contrary to Counter-Plaintiffs' objection, Counter-Defendant's requests were not improper for this asserted reason.

amount or subject matter of discovery requests—a situation indisputably common in litigation in federal court. Furthermore, if a party believes discovery to be improper, it may seek relief via a motion to quash, a motion for protective order, or a motion to stay discovery during the pendency of a pending dispositive motion (which the Counter-Plaintiffs in fact have filed in this case).[9] (Doc. No. 104). As one district court in the Sixth Circuit persuasively explained when dismissing an abuse of process claim,

> this is why the court rules provide means for seeking a protective order; otherwise, every perceived instance of discovery abuse would generate an additional lawsuit for abuse of process, and every lawsuit would potentially generate ten more, *ad infinitum*, along the lines of *The Sorcerer's Apprentice*. This certainly cannot be. Any such claim or theory should be rejected by this Court.

*State Farm Mut. Auto. Ins. Co. v. Universal Rehab Servs., Inc.*, No. 2:15-CV-10993, 2017 WL 1304984, at *8 (E.D. Mich. Mar. 30, 2017). Additionally, the Court questions the invocation of state law, instead of federal (procedural law), to provide in the first instance the remedy for alleged abuse of federal procedure (*i.e.*, discovery rules under the Federal Rules of Civil Procedure). With all this in mind, the Court will dismiss Counter-Plaintiffs' abuse of process claim.

## CONCLUSION

For the above-mentioned reasons, Counter-Defendant's Motion to Dismiss the Counterclaim will be **GRANTED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[9] In granting the Motion, the undersigned takes no position on the propriety of any such relief in this case.